Case number 21-3081, United States of America v. Chance Barrow Affailants. Ms. Wright for the Affailants, Mr. Cahill for the Appellate. Ms. Wright, good morning. Good morning. May it please the Court, Lisa Wright for Mr. Barrow, I'd like to reserve three minutes for rebuttal. We've raised a lot of issues and I welcome questions on any of them, but if I may, I'd like to lay out a quick roadmap of three of the things I'm hoping to have a chance to address. First, the insufficiency of the government's money or property, showing on the wire fraud and the related exclusion of the job performance evidence. Second, three evidentiary and instructional errors that all work together to hinder Mr. Barrow in the same way in his ability to contest criminal intent. Those three were number one, the government's concedes that Mr. Barrow's disclosure of his unemployment in his take to interview was wrongly excluded. Add to that two compounding errors that jump out. One, the jury instruction that cast any reasonable expectation of care with respect to take this handling of Mr. Barrow's disclosures as, quote, irrelevant. And two, preclusion of the fact that Mr. Barrow had sought disclosure advice from a federal fraud enforcement agent. And the big picture on this is that it's the government that bears the burden of showing the cumulative effect of these errors and others I may not get to. Did not have an influence on the verdicts and lack of intent to conceal and thereby defraud was the key defense to all three counts. Most of the questions the government hung its hat on were answered correctly, according to the government's own witnesses. So from our perspective, the case came down to Mr. Barrow's state of mind with respect to the other, the outdated resume and the SF-86C. And that was a hotly contested issue, which obviates any claim that the errors I'm highlighting were harmless. And the third thing I wanted to emphasize is that the entire case was litigated against the backdrop of the government's unfair innuendo regarding the nature and substance of the NCIS allegations. Mr. Barrow was precluded from answering the implications of bad character in any way. When the court declined to tell the jury that the significant offenses were unrelated to his work, the government ran with it, implying at every turn that Mr. Barrow had abused the power bestowed upon him by his badge and his gun. Meanwhile, his hands were tied and the court's attempt at a limiting instruction did nothing to prevent the jury from misusing the government's one-sided information, leaving the entire proceeding infected with unfairness. And finally, if there's time, I'd also like to address restitution. As to the wire fraud insufficiency, the government failed to present evidence from which a jury could find beyond a reasonable doubt that Mr. Barrow intended to deprive or did deprive TIGTA of money or property, as opposed to information that TIGTA wanted in making its hiring decision. Indeed, because the government believed it needed to only prove that Mr. Barrow defrauded TIGTA of a job, quote-unquote, the government made no effort to prove that he didn't do that job and earn his salary, as well as would a person who had honestly disclosed the disputed information. The government's entire case hinged on the hiring itself having been based on Mr. Barrow depriving TIGTA of information. But under Girton, employment in and of itself is not property with the meaning of the wire fraud statute. And under Simonelli, an employer isn't deprived of money or property when someone denies it the, quote, right to control its assets by depriving of information necessary to make economic decisions, like hiring. As in Girton, the government is trying to turn a 1001 case into a wire fraud case. The government argues that there's a difference between obtaining and maintaining employment, and that Girton was about the latter. Why isn't this different? Because he got the job in the first instance. Well, that, that, the court in Girton obviously bypassed the opportunity to make that distinction and instead went on a broader basis, the basis we're talking about. And, you know, the government had argued in Girton that there was no difference between maintaining and obtaining. And the court did not go on that basis. I'm not, I guess I don't see a difference if the lie gets you your money, your salary. But really, the question is, did they get the benefit of their bargain? Not, you know, whether it was before or after you employed. Either way, TIGTA is only being deprived of honesty as such in this case, just as in Girton. But that's a kind of a shallow reading in some ways, because you're just basically saying that as long as I'm doing my job, no one is complaining. I'm getting the satisfactory performance. And then the employer is paying me that that's all I need. But it sounds like under Girton, you could take it to a different level. Now, we didn't agree with the Ninth Circuit. So I do agree with you there. But we're talking about the high integrity of the position. And that pre-employment concealment fraud in the application. But then even while they're on day one, you need a trustworthy investigator, because immediately the credibility of the office is shot if one of that investigator's files is at issue in a trial, et cetera, what have you, despite the high level of performance. Well, a couple of answers to that. One, that's equally true when you already have the job. And you're lying. You've got the same problem. But I would also say more fundamentally, the benefit of the bargain has to be impaired not by the fact that you lied, which is what the government's arguing here, that you are a liar and therefore you lack credibility, but by the information you kept from them. That's what normally happens in a wire fraud case. You tell them something that's not true. And if they'd known that fact and hear that fact is the NCIS investigation. But the NCIS investigation was over when he was working. So that fact never impaired. But what are you admitting to earlier? With respect to falsifications, you said we admit certain things. So what are you admitting to? Because the government is considering all of that. I'm sorry, I'm not understanding. Earlier in your opening presentation, you said you admit or concede to certain facts with respect to, I guess, the pre-employment answers. So what are you admitting to? Because right now I hear you saying he didn't say anything that necessarily impacted his pre-employment answers or application for why they actually hired him. Well, I mean, we acknowledge that the government was trying to make the case that he had misrepresented the circumstances under which he resigned. And so you're not admitting anything with respect to pre-employment or with the circumstances as to how he resigned and how he answered those questions. Yeah, I'm sorry, I'm not totally understanding. I guess I'm asking you, what is he admitting to? What is he conceding to with respect to his answers or alleged falsification? I don't think we're conceding anything, if I'm understanding. I mean, we're just saying that assuming they're correct, I guess, assuming they're correct, that there were false disclosures, that those disclosures are what has to go to the heart of the bargain. And the government is saying it's the lying that went to the heart of the bargain because we can't hire a liar. And that would be true in every wire fraud case, you could criminalize, you could turn any disclosure into wire fraud because wire fraud, by definition, requires a false statement. So in any law enforcement hiring case, any 1001 violation, and even probably some things that might not rise to that level because of materiality even, could be wire fraud. And they're just trying to turn 1001 cases into wire fraud cases in the court. And Gertin specifically- Did they argue this? I mean, I know in their briefs here, they talk about the exceptional need for honesty and candor in law enforcement. Did they argue that theory to the jury? No, well, they just pointed, they pointed out the only evidence that they are now trying to grasp onto, which was not put in for the purpose they're now using it for, they did point out that he had to go on administrative leave because he can't be, I guess they used it to say, number one, that you can't work in law enforcement while you're under investigation. Of course, he didn't do that here. So that's all they put in. And they put it in for just the purpose of showing that he wouldn't have gotten the job. But that's not the question here. The question here is, did they get the benefit of the bargain? Did the information that allegedly wasn't disclosed affect the benefit of the bargain? Or are they really complaining that they were deprived of honesty? And we would say it's clear that it's the latter. And just as in Gertin, the indictment charged that the purpose of the wire fraud scheme was to obtain paid employment. Just as in Gertin, Mr. Barrow allegedly lied about his, quote, suitability for that employment. So Gertin can't be meaningfully distinguished. I think anything we can say about this factual situation is as the same or worse in Gertin. So the government had the burden of proving that they didn't receive the benefit of the bargain. And the bargain was the exchange of money for work. And that's what I thought. I was curious that, I know it wasn't at the trial itself, but at the restitution stage, they only had a very, very small amount of money, $2,400 or something, that was allocated to having to reinvestigate some matter, even though he'd been employed for, I guess, close to a year, 10 months, something like that. So it seems like this claim about that he can't do the work, you know, he couldn't do the work. Correct. Wasn't at least shown up in the restitution stage, because it was only a tiny amount that they had to do. That's right. And I'm glad you brought that up, because assuming we could even look at that, you know, which we don't think you can, because that's outside the record. That goes to what I was just- Goes to the record of the case. You mean outside the jury record. The record before the jury. I'm sorry. You mean outside the record before the jury. Outside the sufficiency of the evidence. Yeah. But yes, that's what I mean. Sorry. But because that $2,500 is exactly my point. They didn't rework his cases, because he used to be, before he arrived, under a cloud of a NCIS investigation. Because he wasn't under investigation when he did his work. Is that- He was not under investigation. When he actually started his job? And the timing, when he started- Timing, I think the investigation was dismissed, like, August 30th. And he started work October 1st. Okay. And so, but they- He didn't do any work while he was under investigation. No. And they reworked the case, because he was under investigation then for these offenses. Now he is under investigation, but that's for this offense. So you can't bootstrap, you know, every wire fraud. I understand. Okay. Yeah, okay. So he was specifically asked, did you ever quit? You know, or being asked to force to resign, you know, words to that effect during this process. And that's part of the fabrication that's at issue. That is the allegation that he answered those yes or no questions incorrectly. But what we're saying is, even if he did, he didn't do that to deprive them of property. He always intended to, and in fact did, give them full value. And I think there's a distinction on that and the government's argument, a very fine line argument that having a dishonest employee on your payroll does not give them the benefit of the bargain. Because immediately that trustworthiness that should attach to the officer, and that could harm them later in any type of investigation or trial when you put the person up. Mark Furman in the OJ trial. Well, they, I'm sorry, I lost my train of thought there. I have lost my train of thought. Um, what you're saying is that, I guess what I would say is, in Girton, that was equally true, and that they needed his integrity. He has to have a security clearance. If anything, that's a higher standard of integrity than what's at issue here. So I don't see how that distinguishes Girton in any way. And this is not the kind of information, the fact that he formally, that at one time he was under a cloud, but that cloud was disappeared. That would not be something the government would ever have to disclose to anyone in a trial, you know, the fact that he had this former problem and is now working on a case. When that case comes, that's not information that's going to harm the government in any way. It was only once they realized that he had arguably lied to them, that they're like, we have to investigate this, and you're under investigation. So now, you know, you're no use to us. So we're going to have you do administrative duties, and then we're going to put you on investigative leave. So we would say that's what happened here. And how do we, what's the error that we should look at? How are we to our standard of review here? Well, it's sufficiency of the evidence. And we're saying that because the government didn't realize what it was supposed to be proving, it thought all it had to show was that he got a job by depriving Ticta of information. But neither the job nor the information is property within the meaning of the Wirefraud Statute under Girton and under Simonelli. So they didn't put in what they needed to put in for a reasonable juried rational person to find beyond a reasonable doubt that he intended to deprive of money or property. Because they didn't put in evidence that suggests they didn't get, that his lies went to the heart of the bargain, which was his ability to do the job. So that's... The C.C. Circuit also suggests that it could be plain error review because at the stage of acquittal, there was kind of a generic, you know, request for acquittal based on all the charges. But then once you got specific, you tipped yourself over into plain error. Yeah, well, we disagree with that. As we say in our reply brief, there was a broad motion, broad motion of the type that this court has held. You can make the most general motion in the world, just the words everyone always says, we move for judgment of acquittal on all counts. That preserves everything. The fact that he then went on to say something additional doesn't waive the preservation that he's just engaged in. And that's particularly true here where the judge sort of, you know, suggested that the court expected some argument. And you can, you know, these arguments that were made, it's pretty apparent that they were just, you know, scrambled together to say something. They didn't, there was like zero merit to those. And he never, counsel never went back to ever try to supplement, never accepted the invitation to do that because it appears that the counsel didn't really intend to make specific arguments and was just trying to check the boxes for the court of what it wanted to hear. And so it would be particularly unfair to then now treat those sort of box-checking statements as somehow waiving the general motion. And I'd say the cases where this court has found that a specific motion waives, the, you know, waives anything else, you can't tell in those cases that I saw whether there was a general and then specific, or if it was very clear that I'm only arguing this. And we would say it was not clear here that that's what was, that the argument was limited to it. Why would counsel do that? That would be a crazy thing to do. So I don't think we should read the record to suggest that counsel would just undermine his own motion for judgment of acquittal like that. On this honesty or special need for honesty, Mary, I'm trying to figure out how that works with, because even half-truths can trigger fraud charges, right? That counts as deception, a half-truth. And so is the theory that, and I know it's hard because they didn't try the case on this theory, but is the theory that you have to have special honesty in officers mean that sort of any half-truth or puffery on a resume is suddenly going to become a federal case? I mean, I think it seems like under their theory, any mistake, certainly in a law enforcement case, they would be claiming that anything on your resume that's not 100% right is a false statement or is half-true, then your credibility is in trouble. And because they've tried to bootstrap this honesty thing in, and that's not what the Girton court was thinking when they were talking about what the central, what it is that has to impair the bargain. If the court has no questions on that, I'm moving on to the intent errors. The government has conceded that it was error to exclude that Mr. Barrow told the interview panel that he had left Army CID, and the government tries to show that that was harmless, but it can't meet its burden. It argued that the government argues that he wasn't charged with concealing that he had left. But its theory was that he had intentionally misstated his employment status as a critical foundation for the scheme, and that it was one of the five lies that worked together to create the plan. The government says that the disclosure to the interview panel would have been cumulative of other disclosures of the same information, but the timing is very, is important here, because the excluded disclosure, so he, his initial actions, had conflicting information about his employment status in May. The excluded disclosure happened shortly thereafter in mid-June, where at the in-person interview with the three TIGTA agents sitting across from him, who were going to decide whether to give him the job, he told them that he was unemployed. You have a bunch of evidentiary issues, and unless my colleagues have questions about specific, we do know what you're arguing. Okay. I had one question, at least. So if you're right on the wire fraud convictions, which evidentiary objections remain? That would have to be addressed. All of them. I don't think there's anything that's unique to the wire. It also went to the 1001 charge, all of them. Yes, because I think the intent to conceal and the intent to defraud, I mean, it's the same intent and it's being impaired equally as to both, because both involve false statements, and both involve you have to intend it. And one thing I did forget to say on the wire fraud is that if the court were to think that somehow the government accidentally proved, you know, had enough evidence sufficient to prove that the benefit of the bargain had been impaired, we would still get a new trial on wire fraud because our job performance evidence was excluded. So no matter what, we would need a new trial on the wire fraud. And then, of course, we also have all our new trial arguments that go to all the counts. But I'm happy to take whatever questions. We're not challenging the count three, concealment of a material fact, right? Well, we're asking for a new trial on that count because of all the procedural errors. Right. But we're not saying it's insufficient. We're not saying it's insufficient. You know offhand what he faces for that count. Alone. I'm not sure what the guidelines would be, whether it would be, you know, the same or less. I don't know. But doesn't he already? Yes, but we're not. I mean, the issue here is really just getting him to acquittal. Because he's already served his full sentence. Yes, he has. Well, except for the not super. Incarceration. Yes. Yes. So I haven't focused on how the guidelines would change. Is that it? Okay, we'll give you a couple of minutes. Thank you. Okay, Mr. Cahill. Thank you. May it please the court. Timothy Cahill for the United States. The evidence was sufficient to support the wire fraud conviction because a rational juror could have found that Barrow's fraud deprived Ticta of the benefit of its employment bargain when it hired him to be a criminal investigator. Unlike honest services fraud, Ticta was not merely deprived of honesty as such. There's evidence in the record in that trial that Barrow's fraud directly undermined the value of his services as a criminal investigator. A job that included duties such as gathering evidence to be admissible at trial. Where was that in the job application that was posted? The need for a special honesty. The job application, I don't think specifically said the need for. Didn't say a word about it. Who during the interview asked him a question? When did this come up during the interview about the exceptional need for honesty? So your honor, I can point to that. I don't know that it was. I don't think there was testimony about the interview. I would point to Shanda Jones testimony that took this personal security specialist who evaluated his application, who specifically did testify that it was necessary to have a higher standard of integrity. And there was other testimony as to why that was about the danger of criminal investigators cases getting thrown out in court. Their integrity was subject to attack about the fact that criminal investigators needed to do things like gather evidence that would be admissible at trial. Needed to do things like testify at trials if their cases went to criminal prosecution. This isn't the theory on which the case was tried. It's not the theory on which it was tried. Was that you got, you didn't get the benefit of the bargain. The government kept objecting every time defense tried to put in evidence to show that you got the services you asked for. And the court was quite, the Supreme Court was quite clear in Simonelli that we cannot after the fact pick out little pieces of evidence here and there. One witness is one statement in a different context and try to cobble it together to come up with a whole new theory of the fraud and substitute ourselves for the jury and convict somebody. So Sarah, I think this in your brief, you argued plain air that it wasn't plain error, but I didn't see that a whole argument section that lays out for me the wealth of evidence, showing that this was put before the jury, that it was argued to the jury by the government. And if it was argued, how could the court possibly have precluded the defense from putting in its evidence that in fact you did get the benefit of the bargain? So I think that question encompasses a few issues. On your honor, I'll try to address all of them. First of all, while we do argue that plain error applies here, I want to emphasize that we don't view that as determinative. We indicated in our brief that even under the highly differential sufficiency review that traditionally applies to sufficiency review, the government should prevail here. I just want to quickly address your honor's reference to Simonelli. That wasn't a sufficiency case. That was a case where there was a jury instruction that specifically instructed the jury that they could convict based on intangible rights. This jury was properly instructed that it could only convict on deprivation of money or property. There's no jury instruction claim on that element. This is only being reviewed for sufficiency. What a rational juror could find. In terms of the evidence in the record, your honor, I would submit that we did outline it in the brief. I would point to testimony on the appendix, a 1880 to 81, a 1931 to 32, a 2384 to 85. All of those are testimony about pages. Okay. So your honor, I get so I just didn't. When I look at your opening argument, your closing argument, all the arguments as to why the benefit of the bargain evidence that they wanted to put in was irrelevant in the district court's words, and the government was objecting that it was irrelevant because it didn't matter in the government's words, in the court's words, if they got the benefit of the bargain. It was about whether he lied to obtain a salary, whether he lied in the government's words to get his job back, to have a gun back, to be an investigator again. That's what was said. And again, so I just, I'm not sure how these three little pieces aren't exactly what Simonelli said we can't do. We can't piece it together afterwards on a different thing. So again, I want to try to respond again to all of the pieces there for your honor. One is that this, I would acknowledge this was not the emphasis of the government's argument. This was not a case that was, this was a case tried after GERD, not before, excuse me, before GERD, not after GERD. That said, this is sufficiency review. The question is whether the evidence was sufficient. You've been the light most favorable to the government, granting all reasonable inferences, and the evidence that was there was sufficient that a jury could credit. Do you acknowledge that the government objected when the defense tried to put in evidence about benefit of the bargain, that it was irrelevant? So your honor, and I wanted, I do want to address the tick to work performance reviews as well. And so the government's objection there was that that didn't go to an issue that was in dispute. And we maintained that. The issue was the government's theory. Even now, as we're arguing that the deprivation of the benefit of the bargain was a criminal investigator whose integrity could be attacked, not a criminal investigator who lacked the ability to perform the individual tasks of completing an investigation. In the case, the government said, and the court said it's irrelevant whether you got the benefit of the bargain. I think they'd say it was irrelevant whether he did the tasks performing the job well, because that wasn't an issue that was, did the actual tasks of well, did them well. Well, yes, your honor. If he didn't do them in a way it wouldn't, I assume the government's position would be that if you investigated something well, but your character was so impugned, you couldn't be trusted. And your evidence you gathered wasn't worth anything that he didn't do the job. Well, I think this is actually a very good point you're on. And I want to, I want to follow up on it because I think what your honor is striking at actually helps draw a distinction between an honest services fraud case. And this case in an honest services fraud case, the only harm is that the employer has employed someone who is a dishonest employee. Someone who can't, they can't trust, who might not be performing the services with loyalty and with honesty. And this court and other courts have held that if that's the only deprivation, then that can't sustain the deprivation for wire fraud. But here, but I'm so sorry, your honor, if I could just, I guess I guess I'm trying to finish the thought as to what your honor's question was. I do, I do want to answer your honor's concern here, which is that here the harm wasn't that the perspective harm wasn't that he wouldn't be doing the investigations. Well, there was no, there was no dispute that he, or there was no argument that he wasn't doing the investigations. Well, it's that those investigations wouldn't have had the value to TICTA as a law enforcement agency that they bargained for. That any evidence that was gathered would be impaired from being used in a criminal prosecution. That if Mr. Barrow needed to testify in a criminal prosecution on a case that he investigated, he would be impaired from being able to do so because his integrity could be so subject to attack. And that's the bargain they were paying for. So one correction, Simonelli was a sufficiency of evidence case. And that's where the Supreme Court refused to allow courts to pick and choose your three sided pages of transcript evidence. And then the nuances about performing well and performing in a way that's going to hold together in court. Um, and, and given again, that the defense tried again and again and again to put in evidence about the ability to perform about his performance of the job, his ability to perform the job, get the benefit of the bargain and his intent, which is really what we're talking about here. Did he intend not to give you the benefit of the bargain? I don't understand how we could pick these few pieces of evidence and accept that it was somehow undisputed when we don't have the defense evidence in, I'm assuming she, when your, your friend gets up on rebuttal, she'll say there was a lot of dispute about all of these things. Well, I don't think there's frankly, your honor, any dispute again about the fact that he had experience performing the tasks of doing investigations. And that's all that his work performances would have shown. At worst, the exclusion of the work performances was harmless error because the government, and I do want to go back to another question your, your honor pose, which is whether this was true that the government, the government never redid any of his work in this case, because even the, even after it found out he'd been under investigation at the time, at least I believe at Senate scene, there was evidence that there was one investigation that was done. So defense counsel just, that's like the $2,400, but defense counsel said that that was work that he had done. That was at the time they discovered the lie and started their own investigation is what record evidence was there before the jury, which is really the only thing that matters right now. What record evidence was there before the jury that he intended, or you can do it either from the intent side or that you actually lost the property that in fact, the government did not receive the performance that it needed and that it had to throw out his work, redo his work. So, so there's a few things there, your honor. One, I just want to do quickly correct that the work that was redone was done because it could not be relied upon to be used in a criminal prosecution. I believe that that was, I'm not disputing that the question is which investigation was the problem there. And defense counsel said the investigation that was the problem there was TIGTA's investigation, not the CID investigation. You know, I don't think it's in the record, which what's what it is. But the fact was that it had to be redone because he had committed, committed the fraud in this case, but, but to start to circle back, they said it would be, it was redone because he was under investigation by TIGTA. So they had not yet actually made a conclusion that, so that, that I think is, is actually not correct. And I don't, I actually did not, and I don't mean to say Powell's counsel misrepresented. I don't think that actually, at least in my recollection is how it was framed. It wasn't because he was under investigation by TIGTA. Once he was under investigation by TIGTA, he was placed on administrative duties. He wasn't doing investigations at that point. It was based on his earlier fraudulent representations. I think, I think my, my, Powell's counsel's argument would point out, which he wasn't under investigation at the time he did any work. Well, he was an individual, he, he had done the work after he had committed fraudulent misrepresentations to get employment, which made that him somebody who TIGTA would not want to sponsor his work as a government, as a witness. So the argument here isn't that he had, he had, you had to redo it because of the CID investigation. It's that you had, if you had to redo it because he made a fraudulent misrepresentation on his application form, you would have had to redo 100% of his work, not a teeny tiny little percentage. So this is, this also ties in with one of your other honors questions, because I think that's actually not also correct, because the point is that the work would need to be redone if it was going to be used in a criminal prosecution. Not every investigation leads to a criminal prosecution. Mr. Barrow was only there for- Is there any evidence about all this in the record that you're telling me? Sorry, Your Honor? What is the evidence in the record about why this particular, what this- There's very little, Your Honor, and that's why I don't mean to delve into it. I'm trying my best to respond to Your Honor's questions about it. But I also want to take a step back and point out that for a wire fraud conviction, there actually isn't, it isn't required to prove actual loss. What's required is a scheme to defraud. So the fraud was committed at the moment that he made- Wait, wait, wait, you have to have an intent to defraud of property. And so- You have to show that it was his intent, and yet the fact that you just said 99% of what he did, the government got the benefit of because you said there was only this tiny amount that may be pertained to a court case, but everything else you didn't have to redo. And that, in fact, is what the district court found at the restitution stage, that you got the benefit of the bargain. And you didn't have to do anything else. And you didn't have to do anything else. For all the months he worked, the only thing the district court gave you, and you haven't cross-appealed, is the time when he was on non-work leave. So Your Honor, first of all, there's no minimal amount of damage here that needs to be proved. In fact, there doesn't need to be any actual loss at all. The district court here found actual loss, and at least the actual loss that Your Honor is referring to, the investigation that had to be redone, that actual loss isn't in dispute. But that isn't an element of the wire fraud. Wire fraud was committed when—if the fraud had been discovered on day one when he showed up, this still would have been the same case. He still would have committed the same crime. So in terms of—I did also want to address something before it gets lost in the shuffle that Your Honor had questioned earlier about whether the government had made any arguments along these lines at trial. And I'll point—this is on A2841-42, where during closing the government argued why the fraud mattered to TICTA and said, TICTA is a law enforcement agency, just like Army CID, that cannot take risks that its criminal investigators' outside issues would put its agency work in jeopardy. It didn't use the phrase benefit of the bargain, but I would submit that that means exactly the same thing. That's why TICTA did not get the employee that they hired, the employee that they agreed to pay a salary to, because they didn't get an employee— But now you're arguing that we had a loss, which you said doesn't matter. What I'm trying to show is where is the evidence that he intended to deprive you of that, as opposed to he had whatever his views were about, you know, the explanation at CID, which— Well, yes, Your Honor. So, I mean, I would submit that there was extensive evidence about that. He intended to give you—to give you an investigator whose work wouldn't hold up. That's your argument here. You had a right—the property you lost was an investigator whose work would hold up with reliability levels needed for a law enforcement— So given that Mr. Barrow had worked as a criminal investigator, that knew that an investigator who committed significant criminal offenses or was under investigation for offenses or committed fraud, that work would be put into question. In fact, that actually happened at CID long before he ever applied to TICTA. At CID, he was placed on administrative duties because he had to be able to be taken away from all of his case files. They couldn't risk the danger that anything he worked on on those case files could be jeopardized. So certainly he had the knowledge that that would happen if he was hired at TICTA for the same job with these major integrity concerns. So there was—and the jury found—necessarily found that he had the intent to defraud, that he had the intent to conceal these things. Where is all this argument about these—how there is sufficient evidence on this particular theory in your brief? Because the only sufficiency argument you have is didn't do plain error, and then you maintain distinction. So if you can tell me where in your brief you laid out how there was sufficient evidence and how the government actually indicted and proved his intent to do this. Not that there's a little piece of evidence here and there, because that's what was exactly the argument in the Simonelli, and it's exactly what the Supreme Court rejected. So, Your Honor, I would note that we indicate on page 20, note 14, that we believe that either standard of review for a sufficiency claim is sufficient for the government to And in that sentence, Barrow's claim would also fail under the highly deferential standard of review for a preserved sufficiency claim. That's it. And, Your Honor, except for the one argument that we make with respect to whether the court could consider evidence outside of the trial record, which is—it's a relatively small part of the sufficiency argument—the rest of the sufficiency arguments are the same. I mean, the standard of review might affect what the court's doing with it, but the arguments as to why it was sufficient are the same. Wait, wait, I'm very—I'm utterly confused. It's not—it's not in your brief. You've made a lot of—and I appreciate it, and I appreciate your careful knowledge and review of the record and your efforts to answer my questions. I 100% appreciate that. But this is not the argument that's in the brief. This is not the—I mean, you told me you have a one-sentence footnote, but, of course, that's not enough to preserve an argument in this court. Your Honor, frankly, respectfully, the one-sentence footnote was about the standard of review saying that we prevail under either standard of review. My point is that the substantive arguments are the same under either standard of review. I would point to pages 23 and 24 where you say, Gerten does not support Barrow's plain error sufficiency claim. There was evidence at trial that Barrow's fraud deprived Ticta of the benefit of the bargain when it hired him as a criminal investigator, which is, I think, exactly the argument Your Honor is referencing. And what follows—I understand Your Honor may not agree with our position on that evidence, but it certainly is in the brief. No, what I'm trying to get to is that that's what the case was about, that that was—that the bargain you were deprived of was this higher standard of integrity that didn't show up anywhere in the application process that I could see. You can correct me if I'm wrong. And that they—you know, that someone described that they have to collect evidence and sometimes warrant affidavits, testify oath in court, but there's just really no evidence that you lost anything that was before the jury that you didn't get from him. Now, maybe it was because it was only 10 months or something less than a year that he was there, but there's no evidence before the jury that I saw, because these things were not in—were in a very different context. And to be fair to you guys, it was pretty great. I mean, to be fair to you, it was pretty great. You were doing it under a different—in a different state of law, but it just wasn't the theory of this case. And, Your Honor, I want to emphasize that on a sufficiency review, what we're looking at is whether a rational juror could have found that this was satisfied. And again, we submit that a rational juror, from viewing all of the evidence in the plate most favorable to the government, drawing reasonable inferences from this testimony, from this evidence, about the higher standard of integrity that is necessary and the consequences when it's not satisfied, that TIGTA did not receive the benefit of the story. Why did the government not—why did the government keep objecting when the defense tried to put in the other side of the story? And so, again, Your Honor, I would push back on the other side of the story, because the defense wasn't trying to admit evidence that would push back on the theory that a criminal investigator with integrity concerns was of less value to TIGTA. That wasn't what the work performance reviews would have shown at all. Those work performance reviews were completed before the fraud was ever discovered. That was their theory of why the government—you can disagree and argue to the jury, but that was their theory and their evidence of why he didn't intend to deny the government of the work it was looking for, and the government didn't lose anything. And I understand you say it wouldn't have persuaded the jury because of your arguments, but that's not how trials work. The difficulty with this case is—and the reason I think the district court kept saying this is irrelevant, this is irrelevant—because the government had, pre-Gweritton, understandably, a different theory of what the property injury was. The argument was that he lied in order to get the property of a salary, that he ordered to get the property of a position. Really, that's at least how I have read this case. So I want to address— Ninety-nine percent of what was brought—maybe there were a couple little references here, they were all to the end of, see, he wouldn't have gotten, had he told us the truth, he wouldn't have gotten the salary. He wouldn't have gotten the job, the gun, the badge. He wouldn't have gotten those if he had told us because we can't have people under investigation working for us. That had to be the argument, because it can't be if he hadn't lied to us. If he had told us, then he wouldn't have lied to you. You wouldn't have had that. The whole argument has to be, had he told us he was under investigation, which he wasn't when he started working. And so that's how the evidence came in. And so, Your Honor, I want to address at least two things encompassed there. One is, to the extent—again, the government objections to the take-to-work performances and the trial court's ruling that they didn't go to an issue and dispute, even if the court finds that that was an erroneous ruling, we would submit that on this record that was harmless error. There was no—because that wasn't an argument the government had ever made, was that he was incapable of the tasks of performing investigation. The other thing I do want to address, though, Your Honor— I'm sorry. I'm sorry. I'm sorry. I'm sorry. I just want to make sure I understand that—what you just said again. Say that again. It wasn't relevant because it wasn't what you were arguing? It was—in terms of the sufficiency of the evidence on being deprived of the benefit of the bargain, even now on appeal, Your Honor, we're not arguing that they were deprived of the benefit of the bargain because the actual tasks, day-to-day, moment-to-moment of performing an investigation, that he wasn't capable of doing that. It was that the work that he did was of less value to them because it couldn't be used in a criminal prosecution if any one of his investigations ended up having to go to a criminal prosecution, which he was fired—I mean, he ended up being fired 10 months—or being removed from his criminal investigative duties 10 months in. Investigations can take a long time. If they were hiring an investigator, though, part of the bargain was to get somebody whose work could be used in prosecutions. That means that the property he took was the salary. Absolutely, Your Honor, and I want to emphasize— That's what Gertin says is not enough. I strongly disagree, Your Honor. Neither Gertin or any court has ever held that salary can't be the property. In fact, Gertin contemplates scenarios where the salary can be the property. What Gertin says is that the salary can be the property, but the government needs to show that there was a deprivation of the salary so that if they got entirely their benefit of the bargain, then the salary wasn't deprived. But if they didn't get the benefit of the bargain, if they got something less than the benefit of the bargain, then the salary was deprived. I point out on page 451 for Gertin, it says, when employees' deceits don't deprive the employer of money or property, but it says then unless there's a showing that the employer would have paid less for a dishonest employee's work. So here we have evidence that they wouldn't have paid anything for— You have to—it's insufficient if you allege that there was—the State Department was deprived of something more than Gertin's honesty. And that's exactly the deprivation here, was honesty, not while he was working, unlike Gertin, but honesty in the job application. That's what you were deprived of. Yes, you were deprived of honesty in the job application. They were deprived of a lot more than that, which is an essential qualification to have someone conducting criminal investigations, is that the work they do could be used if there's a prosecution based on that investigation. And they were deprived of that. Where is the evidence that all his work was thrown out because it couldn't be used? That isn't the standard, Your Honor. It doesn't exist, but that doesn't resolve the question. The question is whether or not they were deprived of the employee that they paid to hire, and they were. But if the—first again, this benefit of the bargain goes to intent, yes? And property. I think—I would say first and foremost, the benefit of the bargain goes to the question of the deprivation of money or property. Now, there is also a requirement that there's an intent to deprive of money or property, but I would say first and foremost, it applies to the element of deprivation of money or property, the scheme. Not first and foremost. We have to define the property that's being deprived in terms of benefit of the bargain, just as a shorthand from Groton. I would frame it a little bit differently, Your Honor, because the property is still the tangible property interest of the salary. The question of whether that salary was deprived is contingent on whether or not there was the benefit of the bargain wasn't satisfied. If you paid the money, you were deprived of the money. If you didn't get back in return what you paid the money for, then you were deprived of at least some of that money. You were deprived of the value of what you were paying for. And that's—and we submit that a rational juror could have found the evidence here that that's what was— I thought we were saying the same thing. Perhaps we were in different wording, Your Honor. And then—but you still also have to show that he had the intent—he had the intent to, when he fudged on his forms, lied on his forms— And again, Your Honor, we would submit that the evidence— When he lied on his forms, he had the—sorry. I apologize. I thought you were— My brain is going a lot slower than yours this morning, so— I apologize. I will wait. No, no. It's my slow brain. So he had the intent to deprive you—not of the position, not of the salary, not of the badge, not of the position—but he had the intent to deny you a reliable investigator. That was the goal. That was the intent of his lying, was to deny you an investigator whose evidence and work you could use. So, Your Honor, I don't think he had to—oops, I'm sorry. I'm sorry. Again, I thought Your Honor was— Just to make sure. So, I don't know if you're right to talk about record anything.  I don't think that's quite right. I think the intent has to be to have deprived them of the money or property. So, if he sought a salaried position for which they were going to pay him, knowing full well that he was not going to be the caliber of employee because of his integrity issues that they thought they were hiring, then that satisfies the intent requirement. His—and the goal doesn't— He doesn't have to intend to—because you want to put the benefit of the bargain in deprived, not property, I think is what you said before. The benefit of the bargain is an analysis of whether there was any deprivation. Deprivation. Because the whole idea in Gertner— No, no, no, no. It can't be whether there was deprivation because you don't have to. You've told me many times, we don't have to show that. So, it has to be whether he intended to deprive you of that invest—use, what shall we call it, the useful investigator. Yes, you're right. But I guess this goes to—that doesn't—his ultimate goal doesn't need to be somebody sitting around twirling his mustache saying, I'm going to really mess up TIGTA's work. That doesn't need to have been his overarching goal. But if his goal was, under false pretenses, to get a job lying to TIGTA about the caliber of employee he would be, about the qualifications he had by hiding his integrity issues that was going to ultimately undermine that work, he was knowingly and intentionally depriving of the benefit of the bargain. The inferences a jury could make to find intent. Are you saying that the intent requirements, right, it doesn't apply to deprivation as well as property? No, not at all, Your Honor. So, if it applies to deprivation of this particular form of property, okay, you're shaking your head. No, I'm sorry. I'm trying to clear my head, Your Honor. I'm trying to—I apologize. I'm trying to follow. But it is an intent-required finding for this offense, and the intent has to be the fraud, which is the deprivation of some property beyond just a salary post-brutal, okay, and beyond just a position post-brutal. And again, Your Honor— I don't know how you can say what you lost, that you lost, your whole theory now, now is that there's this—there was this super special investigator thing that we were deprived of, and it can't be that you can make that argument without him having—without having to show that he intended to deprive you of that thing, if that thing is the linchpin to having a viable fraud claim post-Guertan. It just—it just can't be. If that's your intent, it can't be that he intended to do that. And so I would just point again, Your Honor, to if that were true, then some parts of the Guertan decision would frankly make no sense. The fact that Guertan contemplates the fact that there could be a showing, that an honest employee—that an employer would have paid less for a dishonest employee's work, that it would have valued it less, wouldn't be a viable fraud claim. But Guertan suggests that it is. Guertan just says in Guertan that the government didn't make that showing. The government's position in Guertan was it didn't have to make that showing, so it didn't attempt to make that showing. But Guertan never says that that showing wouldn't be sufficient for wire fraud. In fact, it indicates that if that showing is made, that it would be sufficient for wire fraud. I see that I'm well over time. If there are any further questions— I just—does Charles have a question? Well, just more of a limiting principle, because earlier we started out, it's kind of talking about if you had fraud essentially in the application, this case is brought about because you later learn about it, you know, so that's why you have differences on the restitution charts. But what about on any instance that an employee has fraud in the application? Are you telling me that immediately there's a criminal charge against that employee? And I think that's kind of where we're going about that you could find out 20 years later, none of the investigations were affected, and then all of a sudden you want somebody to charge this particular employee with a wire fraud crime, even though none of the investigations have been challenged, but you find somehow that there was something wrong on the resume or something wrong in any part of the application process. So I'm just trying to think— So if Your Honor's imagining the exact same scenario, but it's not discovered until after everything is closed, I would actually submit that that doesn't affect the evaluation whether the crime was committed, because again, the actual loss doesn't need to be proven. So given that the intent and the deceit and the misrepresentations all happen at the moment of the application, at that point, he is seeking to be hired for a job, knowing full well that the integrity challenges that could be raised against him could jeopardize any work that he did for TIGTA. Now, if by some series of events it doesn't end up happening, that actually doesn't— that might affect a restitution evaluation, but it wouldn't affect whether the crime of wire fraud was committed. So you say on day one, anybody in any of these agencies who has gotten some falsification is eligible to be— Well, Your Honor, all of the other elements still have to be met. It has to be shown that it was a material misrepresentation. It has to be shown that they were deprived of the benefit of who they thought they were hiring, depending on the job that may or may not be applied. And despite that, you just talked about your words that you could close out all these files, nothing happened during that time. So I think the distinction I'm drawing, Your Honor, and that I thought Your Honor was driving at, is the distinction between whether or not his integrity concerns were hiring somebody whose deficiencies could impair, and I would suggest very likely would impair, criminal investigations, or Your Honor's hypothesizing some scenario where it's so far in the future that we know that as a factual matter they did not end up impairing a particular, or any particular investigation. And with that, I don't think that distinction actually would affect whether the individual committed the crime. Because again, if this had been discovered the day before he went to TIGTA, he still would have committed the crime. Okay. And then you agree that this higher standard of integrity that you're talking about is really intangible? No, Your Honor. I wouldn't. Not as a requirement. In fact, I would- When I say intangible, an intangible type of alleged property, as opposed to money or property that we're specifically speaking about here. So if the only deprivation is honesty or is integrity, I would agree that the concepts, I guess, writ large of honesty and integrity are intangible concepts. But again, the deprivation of property here was the deprivation of the salary for having hired somebody who had, and it wasn't just intangible problems with integrity that somebody might not trust him. It was something that someone could bring up in a court criminal proceeding to have his work ruined out. That's the tangible effect. Okay. And then you as the government, you'll have your theory of the case. And let's say your theory of the case is everything that we've been discussing here. This high standard of integrity that could somehow affect investigations later. Then a judge will actually instruct the jury about the benefit of the bargain. And then the jury then looks at all the evidence that you've had in the case and determines whether or not you've met that definition beyond a reasonable doubt. So back to Judge Millett's questions, essentially on the benefit of the bargain piece, how is this not a jury issue factually? In other words, that's your theory, but the jury after the judge instructs has to feel that the evidence was actually sufficient in the record to meet that definition. And right now we're talking about under your wire fraud indictment that it says devised and intended to devise the scheme of fraud and to obtain money and property. That's what you're going off of in your theory. And again, so first and foremost, Your Honor, I would say it's because there's no jury instructional claim raised here. It's not before the court with respect to this element. I understand there are other jury instructional claims. So the claim here is raised only in the context of sufficiency of the evidence. There's no challenge that the judge's instructions on respect to this element were deficient or that they affected the verdict. So I mean, I think in this case, it's simply not before the court, that the question of how the jury was instructed on this element. Again, I understand. Well, and I guess what I'm going to is that I'm not challenging that the jury was instructed wrongly, but that you have a theory, the judge instructs the jury, and then the jury makes this determination. When I was referring to Judge Millett, I'm sorry, I didn't finish my thought. The defense does not get the opportunity to bring forward its side of the theory of your case when you don't allow the issues with respect to the defendant's performance, so that they could challenge how the jury was instructed to the extent of that's your theory of what benefit of the bargain mean, but they have a different theory of what benefit of the bargain means. They present all of that in front of the jury and the jury chooses. I understand, Your Honor. And so I would want to say, again, that viewing the admission of that evidence, I assume Your Honor is referring to the work performance evidence that was attempted to get in. Viewing that evidence in that light, if this court decides that the exclusion of it was error, I would reiterate that our view is that that would be harmless error. I believe there's no danger here that the jury convicted Mr. Barrow on the theory that he was not capable of performing the tasks of being an investigator. All of the evidence showed that the duties of actual investigative work between his job at CID and at TIGTA were the same. And so if anything, this evidence would have been redundant of that. I understand, Your Honors, and Judge Milleth points that maybe the defense would have found it beneficial to have argued that it was, you know, to have more affirmatively argued it rather than it simply being an issue, not dispute. But to the extent that that was error, we would submit it was harmless error for the reasons I've outlined here. All right. Thank you. Thank you, Your Honor. Does Ms. Wright have any time? All right. Why don't you take two minutes? Thank you. First, I think the government's attempt to pass this as a plain error claim suggests that the government recognizes that Gurdon is indistinguishable. I'm hearing the government concede that Mr. Barrow did do the job properly. They are saying that his work had no value because they couldn't use it, but they could use it. It was only, it wasn't until he was under investigation and once the, wasn't under investigation for the, you know, so we've discussed earlier. It was only once it was discovered that they suddenly could use it. And that would be true in every case, no matter how small the, you know, misrepresentation or the, you know, little omission on the resume, that would always be true. The government suggests that there's some doubt as to why his work became problematic and that it's not. And I would point to in the sentencing exhibits, it was said three times by TIGTA. They explained in their memorandum putting him on administrative leave. They said that the reason he was going on administrative leave was allegations of false statements, and that's 936. 934, when they put him on investigative leave, they said potential false statements are calling into question the employee's character. And when they suspended him, 932, they said allegations of false and misleading statements in the application for employment go to credibility. So it's very clear that's why there's a problem. That's why they have to put him on leave. It's not because he used to be under investigation by NCIS. And to be clear, just to sum up, we can prevail under any standard of review. If there's insufficient evidence, that is a miscarriage of justice. I want to also be clear that all our arguments, our reasons for a new trial, I obviously, we rely on our briefs as to all of those. And I think I failed to state that everything goes to the concealment count and the wire fraud count, but we also do have one argument, the duty to disclose instruction that goes just to the concealment. And that would require, if we're correct about that, that would require a new trial on that. And then you have a response to their argument that it was undisputed, that he knew he wasn't given them, because of his experience as a CID investigator, that he knew if he got the job, he wouldn't be able to give them the benefit of their bargain. That is an investigator whose work they could use. I think if you're asking about, you know, they seem to be saying that they didn't dispute it. So they're disputed in the case, which would mean you didn't dispute it either. And that is that your client, that your client, I say knew, although the test is intent, but knew that if he got the job, he would not be providing the government the investigator they were looking for, because he knew he had lied on his forms. And so he knew he wouldn't, his integrity wouldn't be able to stand up in court. I mean, obviously, we disagree with the whole that he thought the investigation was going to be ongoing, even if he knows there's this investigation. I think they're arguing the same point about lying on the employment forms. About lying on the employment form. I mean, it gets confusing which one they're arguing about, but are they lying on the employment forms about the prior investigation? So sort of hooking the two together. Yeah. I mean, I'm not, I don't, I'm really not understanding, honestly, what the argument is. Do you, is there any dispute that your client knew if he got the job, he wouldn't be giving TIGTA what it was looking for? That is a reliable investigator whose work could be submitted to courts. Not at all. And because he doesn't, he's not thinking he's going to be working for them while under this cloud. He thinks the, you know, investigation is going to be over. I mean, it's unclear that he ever knew the investigation was still pending until, you know, August, perhaps. So I don't know. At the time, he's not at all intending to work there under the cloud. Not at all. I was just going to, and, you know, what they say about that they've conceded that he could do the job and therefore the exclusion of the performance evidence was harmless. I mean, they may have conceded that in their mind, but the jury certainly wasn't told that that whole argument was ruled off base and out of balance. So finally, I would just say that, you know, that we're relying on everything in our brief, which, you know, the government tries to pick apart in their brief, all the ways that he was, Mr. Barrow was prevented from defending himself and sort of justify and say they're all that not important, but the case was close and all the errors compounded on each other such that you can't really read this record as a whole and come away with the conclusion that this trial was fair on any of the counts. And so we ask for dismissal of the wire fraud count and a new trial on the concealment count and alternatively a new trial on all counts. And in any event, reversal of the $74,000 of restitution. Thank you.
judges: Henderson, Millett, Childs